Andrew D. Wright, #8857
Jennifer R. Carrizal, #10116
STRONG & HANNI
9350 South 150 East, Suite 820
Sandy, Utah 84070
Telephone:  (801) 532-7080
Facsimile:  (801) 596-1508
awright@strongandhanni.com
jcarrizal@strongandhanni.com
*Attorneys for Plaintiff*

| This motion requires you to respond. Please see the Notice to Responding Party. |
| --- |

IN THE THIRD JUDICIAL DISTRICT COURT OF SALT LAKE COUNTY

STATE OF UTAH

| | | |
| --- | --- | --- |
| PRIME INSURANCE COMPANY | ) | **COMPLAINT FOR** |
| | ) | **DECLARATORY RELIEF** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No.: |
| AERO GLOBAL LOGISTICS, LLC. | ) | |
| | ) | Judge |
| Defendant. | ) | |
| | ) | Tier 2 |

Plaintiff Prime Insurance Company ("Prime") hereby complains and alleges against Defendant Aero Global Logistics, LLC as follows:

## PARTIES

1.      Prime is an insurance company incorporated under the laws of the State of Illinois, with its principal place of business in Utah.

2.      Upon information and belief, Aero Global Logistics, LLC ("Aero Global") is a limited liability company with its principal place of business in Bernardsville, New Jersey.

## JURISDICTION

3.      Jurisdiction and venue are proper in this Court and County pursuant to Utah Code Annotated Sections 78B-3-304, 78B-6-401, and 78B-3-307.

4.      Pursuant to Policy No. SC22042507, Plaintiff and Defendant have contractually agreed to submit to jurisdiction and venue in any court within the State of Utah and have agreed that Utah law will be applied.

## GENERAL FACTUAL ALLEGATIONS

5.      Prime incorporates each of the allegations set forth above as though fully set forth herein.

**A.  The Policy:**

6.      Plaintiff issued commercial auto insurance to Aero Global in the form of Policy No. SC22042507 with coverage effective dates of May 1, 2022 through May 1, 2023 (the "Policy"). (See Certified Policy, attached hereto as Exhibit 1.)

7.      The Policy includes the following relevant requirements with regards to coverage of a claim.

### COMMERCIAL BUSINESS AUTO INSURANCE POLICY – COMPOSITE RATE
### PCA-00-07

**THIS COMMERCIAL BUSINESS AUTO INSURANCE POLICY (the "Policy") is a manuscript policy, meaning it is a negotiated agreement between the Named Insured and the Insurer, and as such it may differ significantly from liability policies offered by other insurance companies.  This Policy contains very strict claim reporting requirements which must be followed as conditions precedent to coverage.   The terms of this Policy are contractual and are not merely recitals and all information supplied by any Insured to obtain coverage, constitute warranties of the Insured to the Insurer.**

. . . .

**Coverage is strictly limited to Insured Autos operated by Approved Drivers and operations and at those locations listed, described, and defined herein. Various other provisions of this Policy restrict and limit the coverage provided. Please read the entire Policy and all Endorsements carefully to determine your rights and duties and what is and is not covered.**

(Certified Policy PCA-00-07, p. 011, Ex. 1) (bold in the original).

       8.     Next, the Policy contains the following additional information pertaining to coverage.

## SECTION I – LIABILITY COVERAGE

A.     Insuring Agreement

     1.     Subject to all of the terms, limitations, conditions, definitions, exclusions, and other provisions of this Policy, we will pay Damages in excess of any SIR that you are legally obligated to pay because of Bodily Injury or Property Damage to which this Policy applies if caused by an Accident and resulting from the ownership, maintenance, or use of an Insured Auto as described in the Policy

                         . . . .

     6.     In the event that any of the terms, limitations, conditions, definitions, exclusions, or other provisions of this Policy or any Endorsement(s) attached to it are found by a court of competent jurisdiction to be unenforceable or in contradiction to applicable law because of a financial responsibility requirement, the Named Insured agrees to reimburse us for any and all payments made by the Company on account of any Accident, Claim, or Suit involving a breach of the terms of the Policy, and for any payment that the Company would not have been obligated to make under the provisions of the Policy (including Claim Expenses we incur) but for the imposition of that financial responsibility requirement.

(Certified Policy, PCA-00-07, p. 011-012, Ex. 1.)

       9.     The Policy also contains the following relevant exclusions.

## SECTION I – LIABILITY COVERAGE

                         . . . .

B.  Liability Exclusions

                         . . . .

This Policy does not cover, and we will not be obligated to defend you against or pay Damages on your behalf for any of the following:

. . . .

3.        Bodily Injury or Property Damage:

. . . .

        b.        Arising out of acts of an Insured or third-party general contractors, subcontractors, independent contractors, or property owners or their employees involving Claims or Suits alleging negligent hiring of employees or subcontractors, failure to contract with subcontractors, negligent supervision, or any liability relating to any independent contractor's service or failure to provide service.

. . . .

10.       Bodily Injury or Property Damage for which an Insured is obligated to pay Damages by reason of the assumption of liability under any contract or agreement. This exclusion does not apply to liability for Damages assumed in a contract or agreement specifically approved by the Insurer by Endorsement to this Policy, provided the Bodily Injury or Property Damage occurs subsequent to execution of the contract or agreement.

. . . .

24.       Any Claim for punitive or exemplary damages, fines, statutory penalties, or sanctions, whether imposed by law or otherwise, trebled or otherwise multiplied damages or any multiplied portion of a compensatory award, or the return or restitution of legal fees, costs, and expenses. Claims for or awards against any Insured for punitive or exemplary damages, fines, statutory penalties, or sanctions, whether imposed by law or otherwise, trebled or otherwise multiplied damages or any multiplied portion of a compensatory award are not covered by the Policy regardless of whether they are demanded or awarded based upon the conduct of an Insured or upon the conduct of others for whose conduct the Insured may be deemed to be vicariously liable.

(Certified Policy PCA-00-07, pp. 013-016, Ex. 1.)

      10.     The Policy also contains the following relevant information pertaining to Insureds.

### SECTION III – WHO IS AN INSURED?

A.      The "Named Insured" is the person and/or entity expressly designated on the Declarations or in any Endorsement.

(Certified Policy PCA-00-07, p. 022, Ex. 1.)

      11.     Additionally, the Policy includes the following relevant definitions.

## SECTION VIII – DEFINTIONS

. . . .

H.    "Bodily Injury" means physical injury to a person's body, including death, but shall exclude:

. . . .

      2.     Mental or emotional distress, mental anguish, humiliation, embarrassment, mental anxiety, or other emotional, psychological or mental injury, or any physical manifestation thereof.

. . . .

L.    "Damage(s)" means a compensatory sum, monetary judgment, award, or settlement an Insured is or may reasonable become legally obligated to pay as the result of an Accident but does not include fines or statutory penalties, sanctions, whether imposed by law or otherwise, punitive, exemplary, treble damages, or any multiplied portion of a compensatory award, nor the return or restitution of legal fees, costs, and expenses.

. . . .

T.    "Physical Damage" means damage to tangible property, you own, use, rent, or lease. Physical Damage does not include diminution in value or loss of use.

. . . .

BB.    "Scheduled Driver" means a driver who is listed on this Policy under the Scheduled Driver Endorsement and for which the Insured has paid all processing and premium charges to add the driver.

(Certified Policy PCA-00-07, pp. 031-033, Ex. 1.)

      12.     Additionally, the Declarations issued with the Policy provide as follows in pertinent

part.



**Prime Insurance Company**
**Declarations**
Page 2 of 2

| Commercial Auto: | | Line Premium: $581,831 | |
|---|---|---|---|
| $1,000,000 | Per Accident | $25,000 | Uninsured Motorist Per Person |
| $10,000 | SIR - Per Accident | $50,000 | Uninsured Motorist Per Accident |
| $10,000 | Property Damage Clean Up Cost Sublimit | $20,000 | Uninsured Motorist Property Damage |
| | | $0 | Personal Injury Protection Per Person Basic Limits - Refer to coverage form |
| | Number of Drivers: 120 | | |
| **Physical Damage Coverage - Excluded** | | **Coverages:** | |
| | | Driver Surcharge $50 - Per Driver | |
| | | Additional Insured | |
| | | MVR Surcharge | |
| ☐Comprehensive | ☐Collision | ☐Specified Cause of Loss | |

(Certified Policy PCA-00-07, p. 005, Ex. 1.)

13.     A Scheduled Drivers Endorsement was issued with the Policy. That endorsement provides as follows in pertinent part.

### SCHEDULED DRIVERS ENDORSEMENT

### PCA–99–03

**This Endorsement changes the terms and conditions of the Policy issued. Please read it carefully!**

No Coverage shall be provided under this Policy for any Auto which is being used or operated by anyone other than the driver(s) or operator(s) scheduled on this Policy. The Insured hereby warrants that each and every person scheduled on this Policy below is over the age of 23 and under the age of 65, unless such driver has been reviewed and authorized by an underwriter and additional premium, if applicable, has been paid for such drivers. New drivers and operators will not be added to this Policy until the Insured provides in writing the driver's name, date of birth, and driver's license number to the Insurer so that necessary underwriting can be performed.

Policy fees, premium charges for adding additional drivers, and MVR surcharges for adding additional drivers, if applicable to the Policy, are non-refundable regardless of whether the Policy is cancelled. In addition, we have the right to collect additional premium equal to 25% of the total premium due for the Policy if you fail to comply with any premium audit and request made by us at any time.

## Named Driver or Operator Listing

| No. | Name | State | Notes |
|-----|------|-------|-------|
| 1 | Kyle Bolum | VA | |
| 2 | Denise Chambers | WV | |
| 3 | Richard Chambers | VA | |
| 4 | Dempsey Cox | NC | |
| 5 | Robert Cox | WV | |
| 6 | Russell Crenshaw | VA | |
| 7 | Juan Cuestas | VA | |
| 8 | Brian Emhoff | WV | |
| 9 | Charlie Evans | VA | |
| 10 | Manuel Flores | VA | |
| 11 | Harold Hammons | VA | |
| 12 | Larry Luttrell | VA | |
| 13 | Edgardo Mejia | VA | |
| 14 | Jarrod Small | NY | |
| 15 | David Smith | NC | |
| 16 | Ronald Taylor | NC | |
| 17 | Calvin Thompson | VA | |
| 18 | David Thompson | WV | |
| 19 | Tyler Watson | PA | |
| 20 | Howard White | VA | |
| 21 | Rolletti White Jr | VA | |
| 22 | Ryan Barrick | PA | |
| 23 | Kevin Barron | WV | |
| 24 | Roy Baumgardner | PA | |
| 25 | Raymond Brown | PA | |
| 26 | Gary Buck | VA | |
| 27 | Derek Butler | PA | |
| 28 | Daniel Byers | VA | |
| 29 | Christopher Clay | VA | |

| No. | Name | State | Notes |
|-----|------|-------|-------|
| 30 | Michael Dalton | WV | |
| 31 | Henry Duke | NJ | |
| 32 | Codi Fry | PA | |
| 33 | Rodney Frye Jr | PA | |
| 34 | Marvin Garcia | MD | |
| 35 | Christopher Garrett | WV | |
| 36 | Matthew Gouker | PA | |
| 37 | Leonard Grant Jr | VA | |
| 38 | Michael Graves | VA | |
| 39 | Guillermo Guevara | MD | |
| 40 | Santos Guevara | VA | |
| 41 | Christopher Herrell | VA | |
| 42 | Richard Hodson | WV | |
| 43 | Timothy Jewell | VA | |
| 44 | Seth Johnson | VA | |
| 45 | Denis Jones | VA | |
| 46 | Elijah Jones | VA | |
| 47 | Trenton Lane | VA | |
| 48 | Charles Lewellen | PA | |
| 49 | Cody Lopez | VA | |
| 50 | Roger Maher | PA | |
| 51 | Frank McCarty | PA | |
| 52 | Frederick McGolden | VA | |
| 53 | Daniel McGraw | MD | |
| 54 | Jorge Mejia | VA | |
| 55 | Elijah Melton | VA | |
| 56 | David Mitchell | NC | |
| 57 | Brent Moyers | VA | |
| 58 | Matthew Murphy | VA | |
| 59 | Garry Orebaugh Jr | VA | |
| 60 | Donald Parks | VA | |
| 61 | Donte Peoples | MD | |
| 62 | Nery Polanco | VA | |
| 63 | Harry Proud Jr | WV | |
| 64 | Jose Ramos Martinez | VA | |
| 65 | Dennis Robinson | PA | |
| 66 | Mark Rodgers | WV | |
| 67 | Oscar Rodriguez | VA | |
| 68 | Shea Rogers | WV | |
| 69 | Douglas Rokitka | NY | |
| 70 | Salvador Rosales Banos | VA | |
| 71 | Cesar Salamanca | VA | |

| No. | Name | State | Notes |
|-----|------|-------|-------|
| 72 | Donald Sanford | WV | |
| 73 | James Schultz | NY | |
| 74 | Karl Smith | WV | |
| 75 | Roman Smith | PA | |
| 76 | El Hadji Sow | NC | |
| 77 | Ryan Terrell | NC | |
| 78 | Ruben Trejo Gonzalez | VA | |
| 79 | Elmer Ismael Vigil | MD | |
| 80 | Woodson Jr Kevin | VA | |
| 81 | Cornellious Adams | RI | |
| 82 | Perry Azzarello | MA | |
| 83 | Nelson Barros | MA | |
| 84 | Freddy Belliard | RI | |
| 85 | John Bizanos | NY | |
| 86 | Victor Collazo | MA | |
| 87 | Harold Crouch Jr | NY | |
| 88 | Anthony Dattilio | MA | |
| 89 | Albeir Dionisio | MA | |
| 90 | Malik Dutton | NY | |
| 91 | Christopher Gilles | MA | |
| 92 | Kenneth Grifone | NH | |
| 93 | Everett Gunter | MA | |
| 94 | James McDonough | ME | |
| 95 | Paul Medeiros | RI | |
| 96 | Stephen Monahan | ME | |
| 97 | Joshua Nichols | TN | |
| 98 | Donald Ryan | ME | |
| 99 | William Smith | NY | |
| 100 | Maximilian Swan | ME | |
| 101 | Aaron Terry | VA | |
| 102 | James Tillman | NY | |
| 103 | John Washburn | NY | |
| 104 | Michael Albert | ME | |
| 105 | Dante Bean | RI | |
| 106 | Kevron Bowie | RI | |
| 107 | Glendon Briggs | MA | |
| 108 | Jaycee Carpinto | MA | |
| 109 | Israel Chevez | RI | |
| 110 | Patrick Collins | MA | |
| 111 | Carlos Gonzalez Torres | RI | |
| 112 | Briante Harmon | DE | |
| 113 | Chester Jordan | RI | |

| No. | Name | State | Notes |
|---|---|---|---|
| 114 | Paul Marks | RI | |
| 115 | Matthew Partridge | NH | |
| 116 | Kenny Pierre | MA | |
| 117 | Robert Raposa Jr | RI | |
| 118 | Christopher Rivera Perez | RI | |
| 119 | Ashley Sweeney | MA | |
| 120 | Ruben Teixeira | MA | |
| 121 | Joshua Vargas | MA | |
| 122 | Peter Vasquez | RI | |

Special Note: All other drivers excluded.

(Certified Policy PCA-00-07, pp. 007-010, Ex. 1.)

14. Lastly, an MCS-90 Endorsement was issued in conjunction with Aero Global's qualifying operations. That endorsement provides as follows in relevant part.

## MCS-90 ENDORSEMENT

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance is afforded, for public liability, does not apply to injury or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of

the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

(Certified Policy PCA-00-07, p. 041, Ex. 1.)

15.      Additionally, Shawn Shariff, as the CEO/Owner of Aero Global, signed a Personal Guarantee and Indemnity Agreement and agreed to indemnify and hold Prime harmless for any claim involving a driver that was not properly scheduled on the Policy. (See Personal Guarantee, attached hereto as Exhibit 2.)

## B. The Incident:

16.      The underlying claims arise out of an incident that occurred on January 28, 2023.

17.      On that date, Harley Diaz-Baez was operating a 2021 Freightliner (VIN No. -3297) in Louisville, New York on behalf of Aero Global.

18.      The 2021 Freightliner was leased to Aero Global by Penske Truck Leasing.

19.      A collision occurred between the 2021 Freightliner and a 2013 Chevrolet bus.

20.      The incident purportedly resulted in multiple fatalities and injuries.

21.      On or about April 7, 2023, the Estate of Alejandro Vazquez Valdez and Antonio Mestiza Efigenio, individually and on behalf of several minor children, filed suit in New York against Aero Global, Mr. Diaz-Baez, Penske Truck Leasing, and others (the "Valdez/Efigenio claim").

22.      On or about April 27, 2023, Artemis Reyes Torres aka Antonio Reyes Nava filed suit in New York against Aero Global, Mr. Diaz-Baez, and Penske Truck Leasing (the "Torres claim").

23.      On May 5, 2023, Jose Gregorio Reyes-Rodriguez filed suit in New York against Aero Global, Mr. Diaz-Baez, Penske Truck Leasing, and others (the "Reyes-Rodriguez claim").

24. On September 25, 2023, Jony Jonathan Lopez-Rodriguez filed suit in New York against Aero Global, Mr. Diaz-Baez, and Penske Truck Leasing (the "Lopez-Rodriguez claim").

**C.  The Insurance Claim:**

25. Prime received notice of the January 28, 2023 incident on or about January 28, 2023.

26. After conducting an investigation, Prime determined the issues discussed below affect coverage for claims arising out of the January 28, 2023 incident.  In coverage letters dated September 22, 2023 and January 17, 2024, Prime informed Aero Global of the coverage issues. (See Coverage Letter dated September 22, 2023, attached hereto as Exhibit 3, and Coverage letter dated January 17, 2024, attached hereto as Exhibit 4.)

## CLAIM FOR DECLARATORY RELIEF

27. Plaintiff incorporates each of the allegations set forth above as though fully set forth herein.

28. An actual dispute and controversy has arisen between Plaintiff and Defendant regarding whether there is coverage available under the Policy for claims arising out of the January 28, 2023 incident.

29. As noted above, coverage under the Policy is limited to incidents that involve a Scheduled Driver.

30. Pursuant to the Scheduled Drivers Endorsement, *"No Coverage shall be provided under this Policy for any Auto which is being used or operated by anyone other than the driver(s) or operator(s) scheduled on the Policy."*

31. The Scheduled Driver Endorsement lists the names of 122 drivers and then states: *"All other drivers excluded."*

32.     Mr. Diaz-Baez's name is not listed on the Scheduled Drivers Endorsement and coverage for Mr. Diaz-Baez was not added until February 2, 2023 – approximately five days after the subject incident.

33.     Accordingly, Mr. Diaz-Baez was an unscheduled driver when the subject incident occurred and there is no coverage under the Policy for claims arising out of the January 28, 2023 incident.

34.     As set forth above, there is no coverage under the Policy for claims alleging negligent hiring or negligent supervision.

35.     Pursuant to Exclusion No. 3, there is no coverage under the Policy for *"Claims or Suits alleging negligent hiring of employees or subcontractors . . . negligent supervision, or any liability relating to any independent contractor's service or failure to provide service."*

36.     The Valdez/Efigeno Complaint contains allegations of negligent hiring and negligent supervision.

37.     Pursuant to Exclusion No. 3, there is no coverage under the Policy for the negligent hiring and negligent supervision allegations in the Valdez/Efigeno Complaint or any other negligent hiring or negligent supervision claims arising out of the January 28, 2023 incident.

38.     As set forth above, there is no coverage under the Policy for punitive or exemplary damages.

39.     Pursuant to Exclusion No. 24 and the definition of "Damages" there is no coverage under the Policy for *"punitive or exemplary damages".*

40.     In the event it is determined any claimant is entitled to punitive or exemplary damages arising from the January 28, 2023 incident, there would be no coverage under the Policy for such damages.

41.     As set forth above, there is no coverage under the Policy for the return or restitution of legal fees, costs, or expenses.

42.     Pursuant to Exclusion No. 24 and the definition of "Damages" there is no coverage under the Policy for *"the return or restitution of legal fees, costs, and expenses."*

43.     In the event it is determined any claimant is entitled to the return or restitution of legal fees, costs, or expenses arising from the January 28, 2023 incident, there would be no coverage under the Policy for such fees, costs, or expenses.

44.     As set forth above, there is no coverage under the Policy for mental or emotional injuries.

45.     The Policy defines "Bodily Injury" to exclude *"mental or emotional distress, mental anguish, humiliation, embarrassment, mental anxiety, or other emotional, psychological or mental injury, or any physical manifestation thereof."*

46.     In the event it is determined any claimant is entitled to compensation for mental or emotional injuries arising out of the January 28, 2023 incident, there would be no coverage under the Policy for such injuries.

47.     As set forth above, the Policy does not include physical damage coverage.

48.     The Declarations clearly and unambiguously states: *"Physical Damage Coverage – Excluded."*

49.     Prime was not asked to add physical damage coverage to the Policy.

50.     Accordingly, there is no coverage for any physical damage sustained in the January 28, 2023 incident.

51.     As set forth above, coverage under the Policy is limited to Insureds.

52.     Insureds are the *"person[s] and/or entit[ies] expressly designated on the Declarations or in any Endorsement."*

53.     Penske Truck Leasing is not listed on the Declarations or any endorsement and Prime was not asked to add Penske Truck Leasing as an Additional Insured.

54.     The Certificate of Insurance identifying Penske Truck Rental as an Additional Insured was issued by Assured Partners. (<u>See</u> Certificate of Insurance, attached hereto as Exhibit 5.)

55.     Prime did not approve the Certificate of Insurance and Assured Partners did not have authority to bind coverage on Prime's behalf.

56.     Accordingly, Penske Truck Leasing is not an Additional Insured and Prime has no obligation to defend or indemnify Penske Truck Leasing in relation to the January 28, 2023 incident.

57.     As set forth above, there is no coverage for liability assumed through a contract or agreement.

58.     Pursuant to Exclusion No. 10, there is no coverage under the Policy for *"Bodily Injury or Property Damage for which an Insured is obligated to pay Damages by reason of the assumption of liability under any contract or agreement."*

59.     To the extent Aero Global assumed liability for or on behalf of Penske Truck Leasing through a contract or agreement, Exclusion No. 10 would apply.

60.     Prime does not owe any obligation to Penske Truck Leasing based on Aero Global's contractual agreements.

61.     As set forth above, Prime's obligations under the MCS-90 Endorsement are limited to only Aero Global.

62.     Pursuant to the MCS-90 Endorsement, Prime is required *"to pay, within the limits of liability described [in that endorsement], any final judgment recovered against"* Aero Global for liability resulting from the operation of its vehicles.

63.     Prime did not issue an MCS-90 Endorsement for or on behalf of Penske Truck Leasing.

64.     Accordingly, Prime does not owe any MCS-90 obligations to Penske Truck Leasing and Prime has no obligation to indemnify Penske Trucking Leasing in relation to the Valdez/Efigenio claim, the Torres claim, the Reyes-Rodriguez claim, the Lopez-Rodriguez claim, or any other claim arising out of the January 28, 2023 incident.

65.     As set forth above, Aero Global is obligated to reimburse Prime for payments made under the MCS-90 Endorsement in relation to the January 28, 2023 incident.

66.     Pursuant to the MCS-90 Endorsement, Aero Global agreed to reimburse Prime for any payment Prime *"would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement."*

67.     The MCS-90 Endorsement also explains that *"all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company."*

68.     Pursuant to provisions of the Policy, Aero Global is obligated to "*reimburse [Prime] for any and all payments made by the Company on account of any Accident, Claim, or Suit involving a breach of the terms of the Policy, and for any payment that the Company would not have been obligated to make under the provisions of the Policy (including Claim Expenses we incur) but for the imposition of that financial responsibility requirement.*"

69.     Moreover, Shawn Shariff, as the CEO/Owner of Aero Global, signed a Personal Guarantee and Indemnity Agreement and agreed to indemnify and hold Prime harmless for any claim involving a driver that was not properly scheduled on the Policy.  (See Personal Guarantee, Ex. 2.)

70.     Accordingly, Aero Global is obligated to reimburse Prime for all payments made under the MCS-90 Endorsement in relation to claims arising out of the January 28, 2023 incident.

71.     Based on the foregoing, a judicial determination is necessary and appropriate at this time to determine the respective rights of Plaintiff and Defendant under the Policy and the MCS-90 Endorsement.

72.     Pursuant to Utah Code Ann. §78B-6-408, Plaintiff requests a declaration from this Court that:

(a)     There is no coverage under the Policy for claims arising out of the January 28, 2023 incident because the incident involved an unscheduled driver.

(b)     There is no coverage under the Policy for claims alleging negligent hiring or negligent supervision.

(c)     There is no coverage under the Policy punitive or exemplary damages.

(d)     There is no coverage under the Policy for the return or restitution of legal fees, costs, or expenses.

(e)     There is no coverage under the Policy for mental or emotional injuries.

(f)     There is no coverage under the Policy for physical damage arising out of the January 28, 2023 incident.

(g)     Penske Truck Leasing is not an additional insured on the Policy.

(h)     There is no coverage under the Policy for liability assumed by Aero Global through a contract or agreement.

(i)     As coverage for Penske Truck Leasing is precluded, Plaintiff has no obligation to defend or indemnify Penske Truck Leasing in relation to the Valdez/Efigenio claim, the Torres claim, the Reyes-Rodriguez claim, the Lopez-Rodriguez claim, or any other claim arising out of the January 28, 2023 incident.

(j)     As coverage for Penske Truck Leasing is precluded, Penske Truck Leasing has no right of recovery against Prime in relation to the Valdez/Efigenio claim, the Torres claim, the Reyes-Rodriguez claim, the Lopez-Rodriguez claim, or any other claim arising out of the January 28, 2023 incident.

(k)     Prime's obligations under the MCS-90 Endorsement, if any, are limited to Aero Global.

(l)     Prime does not owe any obligations under the MCS-90 Endorsement to Penske Truck Leasing.

(m)     As coverage is precluded under the Policy and the only available coverage for liability claims against Aero Global is under the MCS-90 Endorsement, Aero Global is obligated to reimburse and indemnify Prime for any and all amounts Prime pays in relation to the Valdez/Efigenio claim, the Torres claim, the Reyes-Rodriguez claim, the Lopez-Rodriguez claim, and any other claim arising out of the January 28, 2023 incident.

(n)     Aero Global is also obligated to reimburse Prime for all additional fees, costs and expenses, including reasonable attorney's fees, incurred by Prime as a result of this declaratory judgment action and any other collection activity relating to claims and obligations arising out of the January 28, 2023 incident.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff Prime prays for the following relief:

1.     For a declaration that:

(a)     There is no coverage under the Policy for claims arising out of the January 28, 2023 incident because the incident involved an unscheduled driver.

(b)     There is no coverage under the Policy for claims alleging negligent hiring or negligent supervision.

(c)     There is no coverage under the Policy punitive or exemplary damages.

(d)     There is no coverage under the Policy for the return or restitution of legal fees, costs, or expenses.

(e)     There is no coverage under the Policy for mental or emotional injuries.

(f)     There is no coverage under the Policy for physical damage arising out of the January 28, 2023 incident.

(g)     Penske Truck Leasing is not an additional insured on the Policy.

(h)     There is no coverage under the Policy for liability assumed by Aero Global through a contract or agreement.

(i)      As coverage for Penske Truck Leasing is precluded, Plaintiff has no obligation to defend or indemnify Penske Truck Leasing in relation to the Valdez/Efigenio claim, the Torres claim, the Reyes-Rodriguez claim, the Lopez-Rodriguez claim, or any other claim arising out of the January 28, 2023 incident.

(j)     As coverage for Penske Truck Leasing is precluded, Penske Truck Leasing has no right of recovery against Prime in relation to the Valdez/Efigenio claim, the Torres claim,

the Reyes-Rodriguez claim, the Lopez-Rodriguez claim, or any other claim arising out of the January 28, 2023 incident.

(k)     Prime's obligations under the MCS-90 Endorsement, if any, are limited to Aero Global.

(l)     Prime does not owe any obligations under the MCS-90 Endorsement to Penske Truck Leasing.

(m)     As coverage is precluded under the Policy and the only available coverage for liability claims against Aero Global is under the MCS-90 Endorsement, Aero Global is obligated to reimburse and indemnify Prime for any and all amounts Prime pays in relation to the Valdez/Efigenio claim, the Torres claim, the Reyes-Rodriguez claim, the Lopez-Rodriguez claim, and any other claim arising out of the January 28, 2023 incident.

(n)     Aero Global is also obligated to reimburse Prime for all additional fees, costs and expenses, including reasonable attorney's fees, incurred by Prime as a result of this declaratory judgment action and any other collection activity relating to claims and obligations arising out of the January 28, 2023 incident.

2.     For costs incurred herein.

3.     For such other and further relief as the Court deems just and proper.

DATED this 18th day of January, 2024.

STRONG & HANNI

By   */s/ Andrew D. Wright*
      Andrew D. Wright
      Jennifer R. Carrizal
      *Attorneys for Plaintiff*

Plaintiff's address:
PRIME INSURANCE COMPANY
c/o CLAIMS DIRECT ACCESS
8722 South 300 West
PO Box 4439
Sandy, Utah 84091

Bilingual Notice to Responding Party for Motions (for compliance with URCP 7)

**Notice to responding party**
You have a limited amount of time to respond to this motion. In most cases, you must file a written response with the court and provide a copy to the other party:
- within 14 days of this motion being filed, if the motion will be decided by a judge, or
- at least 14 days before the hearing, if the motion will be decided by a commissioner.

In some situations, a statute or court order may specify a different deadline.

If you do not respond to this motion or attend the hearing, the person who filed the motion may get what they requested.

See the court's Motions page for more information about the motions process, deadlines and forms: utcourts.gov/motions


Scan QR code
to visit page

**Finding help**
The court's Finding Legal Help web page (utcourts.gov/help) provides information about the ways you can get legal help,


Scan QR code
to visit page

including the Self-Help Center, reduced-fee attorneys, limited legal help and free legal clinics.

**Aviso para la parte que responde**
Su tiempo para responder a esta moción es limitado. En la mayoría de casos deberá presentar una respuesta escrita con el tribunal y darle una copia de la misma a la otra parte:
- dentro de 14 días del día que se presenta la moción, si la misma será resuelta por un juez, o
- por lo menos 14 días antes de la audiencia, si la misma será resuelta por un comisionado.

En algunos casos debido a un estatuto o a una orden de un juez la fecha límite podrá ser distinta.

Si usted no responde a esta moción ni se presenta a la audiencia, la persona que presentó la moción podría recibir lo que pidió.

Vea la página del tribunal sobre Mociones para encontrar más información sobre el proceso de las mociones, las fechas límites y los formularios: utcourts.gov/motions-span


Para accesar esta página
escanee el código QR

**Cómo encontrar ayuda legal**
La página de la internet del tribunal Cómo encontrar ayuda legal (utcourts.gov/help-span) tiene información sobre algunas maneras de encontrar ayuda legal, incluyendo el Centro de Ayuda de los Tribunales de Utah, abogados que ofrecen descuentos u ofrecen ayuda legal limitada, y talleres legales gratuitos.

**Bilingual Notice to Responding Party for Motions**
**(for compliance with URCP 7)**